IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BECKWITH ELECTRIC CO., INC.; and
THOMAS R. BECKWITH, Chief Executive
Officer and Primary Shareholder of Beckwith
Electric Co., Inc.

     Plaintiffs,

     v.

KATHLEEN SEBELIUS, Secretary of the
United States Department of Health and
Human Services; UNITED STATES
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; SETH D. HARRIS,
Acting Secretary of the United States
Department of Labor; UNITED STATES
DEPARTMENT OF LABOR; JACK LEW,
Secretary of the United States Department of
the Treasury; and UNITED STATES
DEPARTMENT OF THE TREASURY,

     Defendants.

_____/

COMPLAINT
[Civil Rights Action
under 42 U.S.C. § 1983]

INJUNCTIVE RELIEF
REQUESTED

## **COMPLAINT**

Now come Plaintiffs Beckwith Electric Co., Inc. and Thomas R. Beckwith (collectively "Plaintiffs"), by and through undersigned counsel, and bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof state the following upon information and belief:

## **NATURE OF THE ACTION**

1.     This is a case about religious freedom.  Thomas Jefferson, a Founding Father of our country, principal author of the Declaration of Independence, and our third president,

when describing the construct of our Constitution proclaimed, "No provision in our Constitution ought to be dearer to man than *that which protects the rights of conscience against the enterprises of the civil authority*." Letter from Thomas Jefferson, United States Office of the President, to the Soc'y of the Methodist Episcopal Church at New London, Conn. (Feb. 4, 1809) *cited in People v. Dejonge*, 442 Mich. 266, 278 (1993) (emphasis added).

2.     This is a challenge to regulations ostensibly issued under the "Patient Protection and Affordable Care Act" (Pub. L. 111-148, March 23, 2010, 124 Stat. 119) and the "Health Care and Education Reconciliation Act" (Pub. L. 111-152, March 30, 2010, 124 Stat. 1029) (collectively known and hereinafter referred to as the "Affordable Care Act") that force individuals to violate their deepest held religious beliefs.

3.     The Affordable Care Act, through a Mandate from the United States Department of Health and Human Services, attacks and desecrates the beliefs of the Southern Baptist faith—which calls for its followers to speak on behalf of the unborn and to protect the sanctity of all human life from conception to natural death. Therefore, in accordance with their Southern Baptist faith, Plaintiffs believe that providing emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life, starting with the point of fertilization—is sinful, immoral, and a direct violation of conscience.

4.     One of the provisions of the Affordable Care Act mandates that health plans "provide coverage for and shall not impose any cost sharing requirements for . . . with respect to women, such additional preventive care and screenings . . . as provided for in

comprehensive guidelines supported by the Health Resources and Services Administration" and directs the Secretary of the United States Department of Health and Human Services to determine what would constitute "preventive care" under the mandate. 42 U.S.C § 300gg–13(a)(4).

5.      Without notice of rulemaking or opportunity for public comment, the United States Department of Health and Human Services, the United States Department of Labor, and the United States Department of Treasury adopted the Institute of Medicine ("IOM") recommendations in full and promulgated an interim final rule ("the Mandate"), which requires that all "group health plan[s] and . . . health insurance issuer[s] offering group or individual health insurance coverage" provide all FDA-approved contraceptive methods and procedures. 76 Fed. Reg. 46621 (published Aug. 3, 2011); 45 C.F.R. § 147.130.

6.      The Mandate requires all insurance issuers (e.g. Humana) to provide emergency contraception, abortion, abortifacients, and drugs, devices, and services that are capable of killing innocent human life in all of its insurance plans, group and individual.

7.      Health Resources and Services Administration also issued guidelines adopting the IOM recommendations. (http://www.hrsa.gov/womensguidelines).

8.      Under the IOM guidelines, the Mandate requires *all* insurance issuers to provide not only contraception, but also abortion, because certain drugs and devices such as the "morning-after pill," "Next Choice," "Plan B," and "ella" come within the Mandate's and Health Resources and Services Administration's definition of "Food and Drug Administration-approved contraceptive methods" despite their known abortifacient

mechanisms of action, capable of destroying a human life even after implantation on the uterine wall.

9.     The Mandate forces employers and individuals to violate their religious beliefs because it requires employers and individuals to pay for and provide insurance from insurance issuers which fund and directly provide for drugs, devices, and services which violate their deeply held religious beliefs.

10.     Since under the Mandate all insurance issuers must provide what the United States Department of Health and Human Services has deemed "preventative care," employers and individuals are stripped of any choice between insurance issuers or insurance plans to avoid violating their religious beliefs.

11.     The United States Department of Health and Human Services in an unprecedented despoiling of religious rights forces religious employers and individuals, who believe that funding and providing for emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life is wrong, to participate in acts that violate their beliefs and their conscience—and are forced out of the health insurance market in its entirety in order to comply with their religious beliefs.

12.     Plaintiffs seek a Preliminary Injunction and Permanent Injunction, enjoining Defendants from implementing and enforcing provisions of the regulations promulgated under the Affordable Care Act, specifically the Mandate.  The Mandate violates Plaintiffs' rights to the free exercise of religion and the freedom of speech under the First Amendment to the United States Constitution, the Religious Freedom Restoration Act, and the Administrative Procedure Act.

13. Plaintiffs also seek a Declaratory Judgment that the regulations promulgated under the Affordable Care Act, specifically the Mandate, violate Plaintiffs' rights to the free exercise of religion and the freedom of speech under the First Amendment to the United States Constitution, the Religious Freedom Restoration Act, and the Administrative Procedure Act.

14. The Affordable Care Act's emergency contraception, abortion, and abortifacient mandate violates the rights of Plaintiff Beckwith Electric Co., Inc. and its Chief Executive Officer and primary shareholder, Plaintiff Thomas R. Beckwith.

15. Plaintiffs employ over 50 full-time employees and part-time employees and are subject to monetary penalties under the Affordable Care Act and are forced under the Mandate by penalty of heavy fines to conduct business in a manner that violates their religious faith by providing and funding emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life, which violates deeply held religious beliefs.

16. Plaintiffs bring this action to vindicate not only their own rights, but also to protect the rights of all Americans who care about our Constitutional guarantees of free exercise of religion and their freedom of speech, as well as *the protection of innocent human life*.

## JURISDICTION AND VENUE

17. This action in which the United States is a defendant arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1346.

18.    Plaintiffs' claims for declaratory and preliminary and permanent injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by 42 U.S.C. § 2000bb-1, and by the general legal and equitable powers of this Court.

19.    Venue is proper under 28 U.S.C. § 1391(e) because this is the judicial district in which Plaintiffs are located.

## PLAINTIFFS

20.    Plaintiff Thomas R. Beckwith is a descendant of the Beckwiths, who in 1626 endured the hardships of the lengthy and storm-ridden voyage to America on a 40-foot boat called the "Sparrow Hawk"; the Beckwiths landed on these shores to escape religious persecution from England.  Plaintiff Thomas R. Beckwith's ancestors fought in the Connecticut Militia against the British in the Revolutionary War for independence from a tyrannical king.

21.    Plaintiff Thomas R. Beckwith brings this suit to fight against the religious persecution his ancestors thought they had escaped.

22.    Plaintiff Thomas R. Beckwith is a citizen of the State of Florida and the United States, and a member of the First Baptist Church of Indian Rocks in Largo, Florida

23.    The First Baptist Church of Indian Rocks follows the stand taken by its dominion, the Southern Baptist Convention, that emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life are sinful and immoral.

24.     In accordance with his Southern Baptist faith, Plaintiff Thomas R. Beckwith believes that life begins at the very moment of conception.

25.     Plaintiff Thomas R. Beckwith is guided by his religious beliefs in all aspects of his life.

26.     Plaintiff Thomas R. Beckwith holds religious beliefs that disallow him from providing, participating in, paying for, training others to engage in, or otherwise supporting emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life.

27.     Plaintiff Thomas R. Beckwith believes that a company managed under the living God's direction and by God's principles cannot engage in or promote activities that are contrary to such direction, principles, or moral compass.   The action of terminating an innocent human life through abortion-causing drugs (abortifacients) and any devices, and services that are capable of killing innocent human life is a clear violation of such direction, principles, or moral compass, and thus Plaintiff Beckwith Electric, Inc. cannot reasonably be directed by its management to provide or spend any of its funds on such abortion-causing drugs, devices and services.

28.     Therefore, as 93% voting shareholder and Chief Executive Officer of Plaintiff Beckwith Electric Co., Inc., Plaintiff Thomas R. Beckwith conscientiously objects to being forced to spend money towards or providing for group insurance premiums that cover emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life.

29.     In his management of Plaintiff Beckwith Electric Co., Inc., Plaintiff Thomas R. Beckwith strives to lead the company under God's direction and by God's principles. These principles direct Plaintiffs' business practices from the way in which they design and build products to the way in which they treat their employees and customers.

30.     Plaintiff Beckwith Electric Co., Inc. is incorporated under the laws of the State of Florida.

31.     Plaintiff Beckwith Electric Co., Inc. is registered at 6190 118th Ave. N. Largo, Florida 33773.

32.     Plaintiff Beckwith Electric Co., Inc. is a family-owned Florida "C" corporation.

33.     Plaintiff Beckwith Electric Co., Inc. was founded in 1967 by Plaintiff Thomas R. Beckwith's mother and father.  The company started in the family's garage in Illinois and existed in its early days from the financing of Plaintiff Thomas R. Beckwith's grandfather.

34.     Plaintiff Beckwith Electric Co., Inc. provides micro-processor-based technology that protects and controls giant power system generators, transformers, and power lines, and protects the interconnection of alternative energy.  Plaintiff Beckwith Electric Co., Inc. also provides energy-saving Volt/VAr optimization strategies and the automation of Conservation Voltage Reduction.

35.     Plaintiff Beckwith Electric Co., Inc. employs 168 full-time employees in the areas of manufacturing, quality, sales, marketing, customer technical support, engineering, and administration.

36.     Plaintiff Beckwith Electric Co., Inc. offers an extensive employee benefit package, equal for all employees, including the following: medical insurance, pharmacy, dental  insurance, vision insurance, group life insurance, voluntary group life insurance, short term disability, long term disability, long term care insurance, Flexible Spending Accounts, Emergency Travel Assistance, Employee Assistance Program, 401(k) Retirement Plan, Profit Sharing, Educational Assistance, Due Time (Paid Time Off), 8 Paid Holidays, L.A. Fitness Gym Membership, and Corporate Chaplain.

37.     The Corporate Chaplain is from Corporate Chaplains of America, which is a non-profit ministry that provides caregiving chaplains to the workplace.  Corporate Chaplains are primarily seminary trained, ordained, and experienced in ministry.  Corporate Chaplains help employees that may be facing difficult issues of bereavement, marriage, children, finances, addictions, elder care, and other types of crises.  Corporate Chaplains visit Plaintiff Beckwith Electric Co., Inc. on a weekly basis to build caring relationships with the employees.  The program is voluntary to each employee and the chaplain does not provide any help to an employee without his/her permission.

38.     Plaintiff Beckwith Electric Co., Inc. offers gym membership at L.A. fitness free of charge for all Beckwith Electric Co., Inc. employees to advance preventative medicine and public health.

39.     Plaintiff Beckwith Electric Co., Inc. employs 168 full-time employees.

40.     Plaintiff Beckwith Electric, Inc. provides donations to various charities.

41.     In 2012 alone, Plaintiff Beckwith Electric Co., Inc. contributed over $150,000 to charitable causes.

42.     Plaintiff Beckwith Electric Co., Inc. has donated to schools, missions, hospitals, hospices, a political party, churches, and to religious causes.

43.     Plaintiff Beckwith Electric Co., Inc. provides financial assistance to New Life Solutions' Family Ministries, a Christ-centered ministry offering hope, help, and healing for women, teens and families by promoting healthy lifestyle choices and relationships.

44.     New Life Solutions is the ministry head of the Intervention Pregnancy Center of Pinellas County, which provides caring and confidential services empowering women to make informed decisions relevant to their pregnancy with free pregnancy tests, free unlimited ultrasounds, and sessions with a trained Life Coach, Shepherd's Village, which is a Christian Residential ministry for single-parents and their children to provide spiritual, emotional, financial, and life skill training, and the Breath of Life Women's Health and Birth Center, which is a state-of-the-art birth facility.

45.     Prior to the issuance of the Mandate, Plaintiffs were assured by their insurance issuer, Humana, that their policy "does not cover Abortifacient Drugs (Morning after pill, Plan B pill etc.)  We do not cover these services now, nor will we."  A representative from Humana went onto say that "We are 100% confident in our position."

46.     Plaintiffs later learned that the representations of Humana were incorrect, and their insurance policy did include emergency contraception/abortifacients.

47.     Plaintiffs then immediately tried to engineer an insurance policy with Humana which specifically excluded and exempted Plaintiffs from providing emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life.

48.     Plaintiffs were denied the ability to obtain these exclusions in accordance with their deeply held religious beliefs.  Because Plaintiffs tried to change their plan after the effective date of the Mandate, Plaintiffs new policy would require compliance with the Mandate.  Plaintiffs have been stripped of the ability to provide insurance to their employees without violating their religious beliefs.

49.     Plaintiffs' employees receive insurance under this insurance policy with Humana, and have sought to exclude emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life from their insurance policy.

50.     Plaintiff Thomas R. Beckwith, as the Chief Executive Officer and primary shareholder, is the final decision maker when it comes to setting all policies governing the conduct of all phases of business of Plaintiff Beckwith Electric Co., Inc.

51.     Plaintiff Thomas R. Beckwith and his company Plaintiff Beckwith Electric Co., Inc. want their insurance policy to contain these exclusions which reflect their deeply held religious beliefs.

52.     Based on the beliefs and teachings of the Southern Baptist Convention, and their deeply held religious beliefs, Plaintiffs do not believe that emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life are properly understood to constitute medicine, health care, or a means of providing for the well being of persons.  Indeed, *Plaintiffs believe these procedures and drugs involve gravely immoral practices.*

## DEFENDANTS

53.     Defendants are appointed officials of the United States government and United States governmental agencies responsible for issuing the Mandate.

54.     Defendant Kathleen Sebelius is the Secretary of the United States Department of Health and Human Services ("HHS").   In this capacity, she has responsibility for the operation and management of HHS.  Defendant Sebelius is sued in her official capacity only.

55.     Defendant HHS is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the regulation which is the subject of this lawsuit.

56.     Defendant Seth D. Harris is the Acting Secretary of the United States Department of Labor.   In this capacity, he holds responsibility for the operation and management of the United States Department of Labor.  Defendant Harris is sued in his official capacity only.

57.     Defendant United States Department of Labor is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the regulation which is the subject of this lawsuit.

58.     Defendant Jack Lew is the Acting Secretary of the United States Department of the Treasury. In this capacity, he holds responsibility for the operation and management of the United States Department of Treasury.  Defendant Lew is sued in his official capacity only.

59.    Defendant United States Department of Treasury is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the regulation which is the subject of this lawsuit.

## FACTUAL ALLEGATIONS

**Plaintiffs' Religious Beliefs**

60.    Plaintiffs hold and actively profess religious beliefs in accordance with the traditional Christian teachings and Southern Baptist teachings on the sanctity of life. Plaintiffs believe that each human being bears the image and likeness of God, and therefore that all human life is sacred and precious, from the moment of conception.   Plaintiffs therefore believe that emergency contraception, abortion, and abortifacients end a human life and is a grave sin.

61.    The Southern Baptist Convention is opposed to emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life.   The Southern Baptist Convention protects the sanctity of life; "Procreation is a gift from God, a precious trust reserved for marriage.  At the moment of conception, a new being enters the universe, a human being, a being created in God's image. This human being deserves our protection, whatever the circumstance of conception." (http://www.sbc.net/aboutus/pssanctity.asp, last visited January 15, 2013).

62.    In its mission work, the Southern Baptist Convention states, "We ask the people of the world to conform to Christ and His Word, and not to our merely human traditions. We seek to lift up national leadership in the countries where we serve, and to respect the cultural expressions of their faith – we honor the indigenous principle in missions.

13

We cannot, however, compromise doctrine or give up who we are to win the favor of those we try to reach or those with whom we desire to work. This would rob our efforts of their integrity and life. The priority is evangelism which results in churches. This priority is consistent with strong social ministries, including medical care, emergency famine relief, water projects and agricultural assistance." (http://www.sbc.net/aboutus/psmissions.asp, last visited January 15, 2013). The same holds true in all the work of the Southern Baptist Convention, including business ownership of its individual followers, such as Plaintiff Thomas R. Beckwith and his business Plaintiff Beckwith Electric Co., Inc.

63. The Southern Baptist Convention believes that "[w]e stand for a free church in a free state. Neither one should control the affairs of the other. We support the First Amendment to the United States Constitution, with its 'establishment' and 'free exercise' clauses. We do, of course, acknowledge the legitimate interplay of these two spheres. For example, it is appropriate for the state to enact and enforce fire codes for the church nurseries. It is also appropriate for ministers to offer prayer at civic functions. Neither the Constitution nor Baptist tradition would build a wall of separation against such practices as these." (http://www.sbc.net/aboutus/pschurch.asp, last visited January 15, 2013).

64. Recently, leaders of the Southern Baptist Convention have publicly spoken out about how the Mandate is a direct violation of Southern Baptist Faith.

65. The Southern Baptist Convention's Ethics & Religious Liberty Commission declared the Mandate a threat to religious freedom:

> The administration's so-called "contraceptive mandate" requiring health plans to provide contraceptives and abortion-causing drugs and devices is a blatant assault on faith. By requiring faith-based organizations and individuals to pay for these services, the administration has declared that it has the authority to

14

determine when faith is entitled to protection from governmental interference. This is the very kind of raw exercise of power our Founding Fathers intended to prevent when they passed the First Amendment's guarantee of religious freedom.

The administration's proposed narrow exemption from this requirement fails to protect thousands of faith-based organizations that serve the public. These organizations will be forced to choose between their faith convictions and their ministries in our neighborhoods, towns, and cities. Millions of Americans, most of them in need of assistance, will be affected.

No one should misunderstand what this issue is really about. While the offense to us is abortion, and to others it is contraception, the real issue is governmental trampling of faith. The Bible is clear about the sanctity of human life. Those of us who take its teachings seriously understand that God expects His people to protect life whenever possible. This applies most of all to innocent, vulnerable humans. To be required by government to participate in the destruction of life that God calls on us to protect is a direct attack on our faith.

Government cannot be allowed to tell people of faith when they can live out the values of their faith and when they cannot. We must not render to government what is God's. We must not allow government to take from us what is God's.

We will serve the Lord Jesus first. We will keep our consciences clear before Him despite any threats or punishments. To do anything less would be to declare government God. This we will not do!

For the sake of the church, and for every person of faith, we must stop this soul-crushing power-grab now. If government can require this today, they can, and likely will, require more tomorrow. We will not bow to government or any other power that seeks to insert itself between us and our God.

We refuse to comply with this mandate, and we stand with all those whose consciences will not allow them to comply as well. We call on everyone who believes that God, and God alone, is the Lord of the conscience to join us in stopping the administration from pillaging the soul with this God-defying, unconstitutional assault on religious freedom.

(http://erlc.com/article/erlc-comments-on-hhs-mandate-and-its-threat-to-religious-

freedom/, last visited March 4, 2013).

66.     Richard Land, president of the Southern Baptist Convention's Ethics & Religious Liberty Commission, called the Mandate "outrageous."

67.     Richard Land stated that the Southern Baptist Convention, which has more than 16 million members in the United States, "share[s] the concern of our Roman Catholic brothers and sisters."

68.     Richard Land stated that "When it comes to abortifacients, and many birth-control methods are abortifacients," this mandate is "reprehensible in its demands for people to violate their conscience."

69.     Richard Land stated that those belonging to the Southern Baptist Convention cannot comply with the HHS Mandate.  "We are not going to do this. We have a First Amendment right to freedom of conscience, and we're going to defend it. If we have to defend it by going to jail, so be it."

**Plaintiffs Beckwith Electric Co., Inc. and Thomas R. Beckwith, Owner of Beckwith Electric Co., Inc.**

70.     Plaintiff Beckwith Electric Co., Inc. is a for-profit company.

71.     Plaintiff Thomas R. Beckwith and Plaintiff Beckwith Electric Co., Inc. share a common mission of conducting their business operations with integrity and in compliance with the teachings, mission, and values of the Southern Baptist Convention.

72.     Plaintiff Thomas R. Beckwith and Plaintiff Beckwith Electric Co., Inc. purchase group insurance through insurance issuer Humana and provide this insurance to their employees.

73.     Plaintiff Thomas R. Beckwith and Plaintiff Beckwith Electric Co., Inc. strive to provide their employees with employee health coverage superior to coverage generally available in the Florida market in order to be a competitive employer.

74.     Plaintiff Thomas R. Beckwith and Plaintiff Beckwith Electric Co., Inc. have tried to specifically design a health insurance plan with Humana to exclude emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life in line with the religious beliefs of the Southern Baptist faith.

75.     Indeed due to assurances from Humana, Plaintiffs believed they were providing insurance which excluded emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life in line with the religious beliefs of the Southern Baptist faith.

76.     However due to the Mandate, Plaintiffs are unable to obtain insurance that does not violate their religious beliefs.  Plaintiffs are not able to provide insurance excluding emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life in line with the religious beliefs of the Southern Baptist faith.  In order to provide insurance in accordance with their faith, Plaintiffs will have to break federal law.

77.     Moreover, as a part of his religious commitment to the authoritative beliefs and teachings of the Southern Baptist Convention, Plaintiff Thomas R. Beckwith is called to educate others about the teachings of the Southern Baptist Convention and steadfastly avoids practices that subvert the teaching of the Southern Baptist Convention such as providing or funding drugs, devices, services or procedures inconsistent with his Southern Baptist faith.

78.     Plaintiff Thomas R. Beckwith and Plaintiff Beckwith Electric Co., Inc. cannot provide, fund, or participate in health care insurance which covers emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life without violating their deeply held religious beliefs.

79.     Plaintiff Thomas R. Beckwith and Plaintiff Beckwith Electric Co., Inc. cannot provide information or guidance to their employees regarding emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life without violating their deeply held religious beliefs.

80.     In December 2012, Plaintiffs' Insurance Agent, Joni R. Long who is the Executive Vice President of Brown & Brown Insurance in Clearwater, Florida confirmed with Aaron Dwyer, Account Executive from Humana, that *not one participant* in Plaintiffs' insurance plan has ever used the plan for emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life.

81.     Regardless of the fact no participant of Plaintiffs' insurance plan has used it to cover emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life, the Mandate requires Plaintiffs to provide insurance covering that to which Plaintiffs' religiously object.

82.     With full knowledge of these aforementioned beliefs, Defendants issued an administrative rule ("the Mandate") that runs roughshod over Plaintiffs' religious beliefs, and the beliefs of millions of other Americans.

83.     The Mandate not only forces Plaintiffs to finance emergency contraception, abortion, abortifacients, and drugs, devices, and services that are capable of killing innocent

human life, and related education and counseling as health care, but also subverts the expression of Plaintiffs' religious beliefs, and the beliefs of millions of other Americans, by forcing Plaintiffs to fund, promote, and assist others to acquire services which Plaintiffs believe involve gravely immoral practices, including the destruction of innocent human life.

84.     The Mandate unconstitutionally coerces Plaintiffs to violate their deeply-held religious beliefs under threat of directly violating their consciences, in addition to any imposed fines and penalties.  The Mandate also forces Plaintiffs to fund government-dictated speech that is directly at odds with their own speech and religious beliefs.  Having to pay a fine to the taxing authorities or being entirely forced out of the insurance market in order to ensure the privilege of practicing one's religion or controlling one's own speech substantially burdens Plaintiffs' religious liberty and freedom of speech under the First Amendment.

85.     The Mandate strips the Plaintiffs of any choice to select an insurance plan that does not cover and finance emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life, as the Mandate requires that all insurance issuers provide this coverage.

86.     Plaintiffs' plan is not considered "grandfathered" and will be subject to the provisions of the Mandate.

87.     Plaintiffs seek to change their health plan in compliance with their religious beliefs.

88.     Humana deemed that due to the Mandate and the Affordable Care Act, Plaintiffs will not be allowed to exclude emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life from

their insurance plans—and are forced to provide and pay for these services which violate their religious beliefs.

89.     Plaintiffs want to conduct their business in a manner that does not violate the principles of their religious faith.

90.     Complying with the Mandate requires a direct violation of the Plaintiffs' religious beliefs because it requires Plaintiffs to pay for and assist others in paying for or obtaining not only contraception, but also abortion, because certain drugs and devices such as the "morning-after pill," "Next Choice," "Plan B," and "ella" come within the Mandate's and Health Resources and Services Administration's definition of "Food and Drug Administration-approved contraceptive methods" despite their known abortifacient (abortion causing) mechanisms of action.

91.     Defendants' refusal to accommodate the conscience of the Plaintiffs, and of other Americans who share the Plaintiffs' religious views, is highly selective.  Numerous exemptions exist in the Affordable Care Act which appear arbitrary and were granted to employers who purchase group insurance.  This evidences that Defendants do not mandate that all insurance plans need to cover "preventative services" (e.g. the thousands of waivers from the Affordable Care Act issued by Defendants for group insurance based upon the commercial convenience  of large corporations, the age of the insurance plan, or the size of the employer).

92.     Despite granting waivers upon a seemingly arbitrary basis, no exemption exists for an employer or individual whose religious conscience instructs him that certain mandated services are unethical, immoral, and volatile to one's religious beliefs.   Defendants' plan

fails to give the same level of weight or accommodation to the exercise of one's fundamental First Amendment freedoms that it assigns to the commercial interests of large corporations.

93.     The Defendants' actions violate Plaintiffs' right to freedom of religion, as secured by the First Amendment to the United States Constitution and civil rights statutes, including the Religious Freedom Restoration Act (RFRA).

94.     The Defendants' actions also violate Plaintiffs' right to the freedom of speech, as secured by the First Amendment to the United States Constitution.

95.     Furthermore, the Mandate is also illegal because it was imposed by Defendants without prior notice or sufficient time for public comment, and otherwise violates the Administrative Procedure Act, 5 U.S.C. § 553.

96.     Had Plaintiffs' religious beliefs, or the beliefs of the millions of other Americans who share Plaintiffs' religious beliefs been obscure or unknown, the Defendants' actions might have been an accident.  But because the Defendants acted with full knowledge of those beliefs, and because they arbitrarily exempt some plans for a wide range of reasons other than religious conviction, the Mandate can be interpreted as nothing other than a deliberate attack by the Defendants on the Southern Baptist Convention, the religious beliefs held by Plaintiffs and the similar religious beliefs held by millions of other Americans.  The Defendants have, in sum, intentionally used government power to force individuals to believe in, support, and endorse the mandated services manifestly contrary to their own religious convictions, and then to act on that coerced belief, support, or endorsement.  Plaintiffs seek declaratory and injunctive relief to protect against this attack.

**The Affordable Care Act**

97.    In March 2010, Congress passed, and President Obama signed into law, the "Patient Protection and Affordable Care Act" (Pub. L. 111-148, March 23, 2010, 124 Stat. 119) and the "Health Care and Education Reconciliation Act" (Pub. L. 111-152, March 30, 2010, 124 Stat. 1029) (referred to in this complaint as the "Affordable Care Act").

98.    The Affordable Care Act regulates the national health insurance market by directly regulating "group health plans" and "health insurance issuers."

99.    The Affordable Care Act does not apply equally to all insurers.

100.    The Affordable Care Act does not apply equally to all individuals.

101.    The Affordable Care Act requires employers with more than 50 full-time employees or full-time employee equivalents to provide federal government-approved health insurance or pay a substantial per-employee fine.  (26 U.S.C. § 4980H).

102.    Plaintiff Beckwith Electric Co., Inc. employs over 50 full-time employees or full-time equivalents.

103.    Plaintiff Beckwith Electric Co., Inc. constitutes a "single employer" for purposes of the Affordable Care Act as defined at 42 U.S.C. § 18024(b)(4)(A).

104.    Plaintiff Beckwith Electric Co., Inc., as well as Plaintiff Thomas R. Beckwith as the owner and director of Beckwith Electric Co., Inc. must provide federal government-approved health insurance under the Affordable Care Act or pay substantial per-employee fines.

105.    Under 26 U.S.C. § 4980H since Plaintiffs have over fifty full-time employees, if Plaintiffs do not meet the "minimum essential coverage" requirements (i.e. do not provide

emergency contraception, abortion, abortifacients, and drugs, devices, and services that are capable of killing innocent human life) Plaintiffs could owe $2,000 per year for each full-time employee excluding the first thirty full-time employees.  The tax penalty assessable payment calculation would generally be: (168 employees - 30) x $2,000 per year = $276,000 per year tax penalty.

106.    Under the United States Internal Revenue Code, 26 U.S.C. § 4980D(a), there is a tax imposed on any failure of a group plan to meet the requirements of Chapter 100 (relating to group plan requirements).  Under 26 U.S.C. § 4980D(b), the amount of the tax is $100 for each day in the non-compliance period with respect to each individual to whom such failure relates.  This tax penalty would generally be: 168 employees x 365 days per year x $100 each day = $6,132,500 per year tax.

107.    The Affordable Care Act purports to not apply to the failure to offer employer-sponsored insurance to employers with fewer than 50 employees, not counting seasonal workers. 26 U.S.C. § 4980H(c)(2)(A).

108.    Certain provisions of the Affordable Care Act do not apply equally to members of certain religious groups. *See, e.g.*, 26 U.S.C. § 5000A(d)(2)(A)(i) and (ii) (individual mandate does not apply to members of "recognized religious sect or division" that conscientiously objects to acceptance of public or private insurance funds); 26 U.S.C. § 5000A(d)(2)(B)(ii) (individual mandate does not apply to members of a "health care sharing ministry" that meets certain criteria).

109.    Plaintiffs do not qualify for an individual exemption under 26 U.S.C. § 5000A(d)(2)(A)(i) and (ii) as Plaintiffs do not object to acceptance of public or private insurance funds in their totality.

110.    The Affordable Care Act's preventive care requirements do not apply to employers who provide so-called "grandfathered" health care plans.

111.    Employers who follow HHS guidelines may continue to use grandfathered plans indefinitely.

112.    Plaintiffs' current insurance plans do not qualify as "grandfathered" health care plans, and are considered "non-grandfathered."

113.    Furthermore, Plaintiffs do not qualify for the "religious employer" exemption contained in 45 CFR § 147.130 (a)(1)(A) and (B).

114.    There have been changes made to Plaintiffs' plan after 2010, and participants have never been notified of a "grandfathered" status.

115.    Furthermore Plaintiffs are not eligible for "grandfathered" status under the Affordable Care Act and will be subject to the requirements of the Affordable Care Act and the Health and Human Services Mandate because: (1) the health care plan does not include the required "disclosure of grandfather status" statement; (2) Plaintiffs do not take the position that its health care plan is a grandfathered plan and thus does not maintain the records necessary to verify, explain, or clarify its status as a grandfathered plan nor will it make such records available for examination upon request; and (3) the health care plan has an increase in a percentage cost-sharing requirement measured from March 23, 2010. *See* 42

U.S.C. § 18011(a) (2); 26 C.F.R. § 54.9815-1251T; 29 C.F.R. § 2590.715-1251; 45 C.F.R. §147.140.

116.    Since the Plaintiffs do not qualify for the "religious employer" exemption, they are not permitted to take advantage of the "temporary safe-harbor" as set forth by the Defendants at 77 Fed. Register 8725 (Feb. 15, 2012).

117.    Plaintiffs are thus subjected to the Mandate and are confronted with choosing between complying with its requirements in violation of their religious beliefs or violating federal law.

118.    Plaintiff Beckwith Electric Co., Inc. and Plaintiff Thomas R. Beckwith cannot obtain health insurance at this point in accordance with their religious beliefs.  Plaintiffs must choose between complying with the requirements of the Affordable Care Act in violation of their religious beliefs or paying ruinous fines that would have a crippling impact on their ability to survive economically.

119.    Plaintiffs are collectively confronted with complying with the requirements of the Affordable Care Act in violation of their religious beliefs or removing themselves and employees from the health insurance market in its entirety—endangering the health and economic stability of their employees and forcing Plaintiff Beckwith Electric Co., Inc. to be non-competitive as employers in a market where other, non-Southern Baptist employers will be able to provide insurance to their employees under the Affordable Care Act without violating their religious beliefs.

120.    The Affordable Care Act is not generally applicable because it provides for numerous exemptions from its rules.

121.   The Affordable Care Act is not neutral because some groups, both secular and religious, enjoy exemptions from the law, while certain religious groups do not.   Some groups, both secular and religious, have received waivers from complying with the provisions of the Affordable Care Act, while others—such as the Plaintiffs—have not.

122.   The Affordable Care Act creates a system of individualized exemptions.

123.   The United States Department of Health and Human Services has the authority under the Affordable Care Act to grant compliance waivers ("HHS waivers") to employers and other health insurance plan issuers.

124.   HHS waivers release employers and other plan issuers from complying with the provisions of the Affordable Care Act.

125.   HHS decides whether to grant waivers based on individualized waiver requests from particular employers and other health insurance plan issuers.

126.   Upon information and belief, more than a thousand HHS waivers have been granted.

127.   The Affordable Care Act, and inescapably the Mandate, penalizes noncompliance—with a minimum fine of $2,000 per employee per year and IRS penalties. *See* 26 U.S.C. §§ 4980D & 4980H and 29 U.S.C. § 1132.

**The "Preventive Care" Mandate**

128.   A provision of the Affordable Care Act mandates that health plans "provide coverage for and shall not impose any cost sharing requirements for . . . with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration" and directs the

Secretary of United States Department of Health and Human Services to determine what would constitute "preventative care" under the mandate. 42 U.S.C § 300gg–13(a)(4).

129.    On July 19, 2010, HHS, along with the United States Department of Treasury and the United States Department of Labor, published an interim final rule under the Affordable Care Act. 75 Fed. Reg. 41726 (2010). The interim final rule required providers of group health insurance to cover preventive care for women as provided in guidelines to be published by the Health Resources and Services Administration at a later date. 75 Fed. Reg. 41759 (2010).

130.    On February 15, 2012, the United States Department of Health and Human Services promulgated a mandate that group health plans include coverage for all Food and Drug Administration-approved contraceptive methods and procedures, patient education, and counseling for all women with reproductive capacity in plan years beginning on or after August 1, 2012 (hereafter, "the Mandate"). *See* 45 CFR § 147.130 (a)(1)(iv), as confirmed at 77 Fed. Register 8725 (Feb. 15, 2012), adopting and quoting Health Resources and Services Administration (HRSA) Guidelines, (http://www.hrsa.gov/womensguidelines).

131.    The Mandate was enacted pursuant to statutory authority under the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, as amended by the Health Care and Education Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (ACA). 77 Fed. Reg. 31, 8725 ("Affordable Care Act").

132.    In its ruling, HHS included all FDA-approved contraceptives under the banner of preventive services, including emergency contraception, abortion, abortifacients, and drugs, devices, and services that are capable of killing innocent human life, such as the

intrauterine device ("IUD"), "morning-after pill," "Next Choice," "Plan B," and "ella," a close cousin of the abortion pill RU-486.  (http://www.hrsa.gov/womensguidelines).

133.    The Mandate's reach seeks to control the decisions of employers, individuals and also the decisions of *all* insurance issuers (i.e. "Humana," etc.).  42 USC § 300gg-13 (a)(1),(4). ("A group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for evidence-based items or services that have in effect a rating of 'A' or 'B' in the current recommendations of the United States Preventive Services Task Force; . . . with respect to women, such additional preventive care and screenings not described in paragraph (1) as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph.").

134.    *All* insurance issuers are mandated to include emergency contraception, abortion, abortifacients, and drugs, devices, and services that are capable of killing innocent human life such as the intrauterine device ("IUD"), "morning-after pill," "Next Choice," "Plan B," and "ella" in *all* of their group *and* individual plans, not specifically exempted, beginning as of August 1, 2012 and effective on the anniversary of the employer's plan year.

135.    Individuals and employers, regardless of the number of employees they employ, will eventually be forced to select an insurance plan which includes what HHS deemed "preventative care."

136.    All individuals and employers will be stripped of their choice not to pay for the "preventative care," regardless of whether paying for such "services" violates one's conscience or deeply held religious beliefs.

137.    Health insurance issuers include insurance companies such as Humana, which is the insurance issuer used by Plaintiffs.

138.    The Mandate reaches even further than the Affordable Care Act to eliminate all employers and individuals from selecting a health insurance plan in which the insurance issuers do not automatically provide emergency contraception, abortion, abortifacients, and drugs, devices, and services that are capable of killing innocent human life.

139.    Prior to promulgating the Mandate, HHS accepted public comments to the 2010 interim final regulations from July 19, 2010 to September 17, 2010.  Upon information and belief, a large number of groups filed comments, warning of the potential conscience implications of requiring religious individuals and groups to pay for certain kinds of services, including emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life.

140.    HHS directed a private health policy organization, the Institute of Medicine ("IOM"), to suggest a list of recommended guidelines describing which drugs, procedures, and services should be covered by all health plans as preventative care for women. (http://www.hrsa.gov/womensguidelines).

141.    In developing its guidelines, IOM invited a select number of groups to make presentations on the preventive care that should be mandated by all health plans.  These were the Guttmacher Institute, the American Congress of Obstetricians and Gynecologists (ACOG), John Santelli, the National Women's Law Center, National Women's Health Network, Planned Parenthood Federation of America and Sara Rosenbaum. (http://www.nap.edu/openbook.php?record_id=13181&PAGE=217).

142.   No religious groups or other groups that oppose government-mandated coverage of emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life, and related education and counseling were among the invited presenters.

143.   One year after the first interim final rule was published, on July 19, 2011, the IOM published its recommendations.  It recommended that the preventative services include "All Food and Drug Administration approved contraceptive methods."   (Institute of Medicine, Clinical Preventive Services for Women: Closing the Gaps (July 19, 2011)).

144.   Preventative services therefore include FDA-approved contraceptive methods such as prescription contraceptive devices, including IUDs, and emergency contraceptives and abortifacients, including Next Choice, Plan B, also known as the "morning-after pill"; and ulipristal, also known as "ella" or the "week-after pill"; and other drugs, devices, and services that are capable of killing innocent human life pursuant to the Plaintiffs' religious beliefs.

145.   Next Choice, Plan B and "ella" can prevent the implantation of a human embryo in the wall of the uterus and can cause the death of an embryo.  The use of artificial means to prevent the implantation of a human embryo in the wall of the uterus or to cause the death of an embryo each constitute an "abortion" as that term is used in federal law and Southern Baptist teaching.  Consequently, Next Choice, Plan B and "ella" are abortifacients.

146.   Thirteen days later, on August 1, 2011, without notice of rulemaking or opportunity for public comment, HHS, the United States Department of Labor, and the United States Department of Treasury adopted the IOM recommendations in full and

promulgated an interim final rule ("the Mandate"), which requires that all "group health plan[s] and . . . health insurance issuer[s] offering group or individual health insurance coverage" provide all FDA-approved contraceptive methods and procedures. 76 Fed. Reg. 46621 (published Aug. 3, 2011); 45 C.F.R. § 147.130.   Health Resources and Services Administration issued guidelines adopting the IOM recommendations. (http://www.hrsa.gov/womensguidelines).

147.    The Mandate also requires group health care plans and insurance issuers to provide education and counseling for all women beneficiaries with reproductive capacity.

148.    The Mandate went into effect immediately as an "interim final rule."

149.    HHS did not take into account the concerns of religious organizations in the comments submitted before the Mandate was issued.

150.    Instead the Mandate was unresponsive to the concerns stated in the comments submitted by religious organizations.

151.    When it issued the Mandate, HHS requested comments from the public by September 30, 2011 and indicated that comments would be available online.

152.    Upon information and belief, over 100,000 comments were submitted against the Mandate.

153.    On October 5, 2011, six days after the comment period ended, Defendant Sebelius gave a speech at a fundraiser for NARAL Pro-Choice America.   She told the assembled crowd that "we are in a war." She did not state whom she and NARAL Pro-Choice America were warring against.

154.     During a Congressional hearing on April 26, 2012, Defendant Sebelius admitted that she is totally unfamiliar with the United States Supreme Court religious freedom cases.

155.     Defendant Sebelius showed little concern for the constitutional issues involved in promulgating the Mandate.  At the aforementioned congressional hearing, she admitted that prior to issuing the Mandate she did not review any written materials or any sort of legal memo from her general counsel discussing the effects of the Mandate on religious freedom.

156.     The Mandate fails to take into account the statutory and constitutional conscience rights of religious business owners and for profit companies that exercise business practices in compliance with certain faith practices, such as Plaintiff Thomas R. Beckwith's company Plaintiff Beckwith Electric Co., Inc., a subject of comment.

157.     The Mandate requires that Plaintiffs assist, provide, or fund coverage for emergency contraception, abortion, abortifacients, and drugs, devices, and services that are capable of killing innocent human life, and related education and counseling against its conscience in a manner that is contrary to law.

158.     The Mandate constitutes government-imposed pressure and coercion on Plaintiffs to change or violate their religious beliefs.

159.     The Mandate exposes Plaintiff Beckwith Electric Co., Inc. and Plaintiff Thomas R. Beckwith, as individuals and as employers or companies with over 50 full-time employees, to substantial fines for refusal to change or violate their religious beliefs.

160.    The Mandate imposes a burden on Plaintiffs' employee recruitment efforts by creating uncertainty as to whether Plaintiffs will be able to offer health insurance beyond the beginning of their next plan year on June 1, 2013.

161.    The Mandate places Plaintiffs at a competitive disadvantage in their efforts to recruit and retain employees and members.

162.    Furthermore as a Christian and a Southern Baptist, his religious beliefs and the principle of stewardship require that Plaintiff Thomas R. Beckwith care for his employees by providing insurance coverage for them and their families.

163.    The Mandate forces Plaintiffs to provide, fund, or approve and assist its employees and members in purchasing emergency contraception, abortion, abortifacients, and drugs, devices, and services that are capable of killing innocent human life in violation of Plaintiffs' religious beliefs that doing so is gravely immoral.

164.    Plaintiffs have a sincere religious objection to providing coverage for emergency contraceptive drugs such as Next Choice, Plan B and "ella" since they believe those drugs could prevent a human embryo, which they understand to include a fertilized egg before it implants in the uterus, from implanting in the wall of the uterus, causing the death of a person.

165.    Plaintiffs consider the prevention by artificial means of the implantation of a human embryo to be an abortion.

166.    Plaintiffs believe that Next Choice, Plan B and "ella" can cause the death of the embryo, which is a person and human life.

167.    Next Choice and Plan B can prevent the implantation of a human embryo in the wall of the uterus.

168.    "Ella" can prevent the implantation of a human embryo in the wall of the uterus.

169.    Next Choice, Plan B and "ella" can cause the death of the embryo.

170.    The use of artificial means to prevent the implantation of a human embryo in the wall of the uterus constitutes an "abortion" as that term is used in federal law.

171.    The use of artificial means to cause the death of a human embryo constitutes an "abortion" as that term is used in federal law.

172.    The Mandate forces Plaintiffs to provide emergency contraception, including Next Choice, Plan B and "ella," free of charge, regardless of the ability of insured persons to obtain these drugs from other sources.

173.    The Mandate forces Plaintiffs to fund education and counseling concerning emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life, which directly conflicts with Plaintiffs' religious beliefs and teachings.

174.    Plaintiffs must immediately cease in providing its employees with health insurance coverage in order to fulfill its religious duty to provide for the health and well-being of its employees and their families.  Additionally, employees would be unable to obtain similar coverage in the market as it now exists.

175.    The Mandate forces Plaintiffs to choose between violating their religious beliefs, incurring substantial fines, or terminating their employee or individual health insurance coverage.

176.    Providing counseling and education about emergency contraceptives, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life directly undermines and subverts the explicit messages and speech of Plaintiffs.

177.    Group health plans and insurance issuers have been subject to the Mandate as of August 1, 2012.

178.    Plaintiffs plan year begins on June 1, 2013—and will be subject to the Mandate as of that date without Court intervention.

179.    Plaintiffs have already had to devote significant institutional resources, including both staff time and funds, to determine how to respond to the Mandate.  Plaintiffs anticipate continuing to make such expenditures of time and money up until and after the time that the Mandate goes into effect for the Plaintiffs' plan.

**The Narrow and Discretionary Religious Exemption**

180.    The Mandate indicates that the Health Resources and Services Administration ("HRSA") "may" grant religious exemptions to certain religious employers. 45 C.F.R. § 147.130(a)(iv)(A).

181.    The Mandate allows HRSA to grant exemptions for "religious employers" who "meet[ ] all of the following criteria: (1) The inculcation of religious values is the purpose of the organization. (2) The organization primarily employs persons who share the

religious tenets of the organization. (3) The organization serves primarily persons who share the religious tenets of the organization. (4) The organization is a *nonprofit* organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended." 45 C.F.R. § 147.130(a)(iv)(B).

182.    The Mandate imposes no constraint on HRSA's discretion to grant exemptions to some, all, or none of the organizations meeting the Mandate's definition of "religious employers."

183.    HHS stated that it based the exemption on comments on the 2010 interim final rule.  76 Fed. Reg. 46621.

184.    There is *no* exemption for a *for-profit* company.

185.    Plaintiffs reasonably expect, as confirmed by their insurance issuer, Humana, that they are subject to the Mandate despite the existence of exemptions to the Mandate as none of the exemptions apply to Plaintiffs.

186.    On January 20, 2012, Defendant Sebelius announced that "[n]onprofit employers who, based on religious beliefs, do not currently provide contraceptive coverage in their insurance plan, will be provided an additional year, until August 1, 2013, to comply with the new law," on the condition that those employers certify they qualify for the extension.  At the same time, however, Sebelius announced that HHS "intend[s] to require employers that do not offer coverage of contraceptive services to provide notice to employees, which will also state that contraceptive services are available at sites such as community health centers, public clinics, and hospitals with income-based support."  *See* Statement by U.S. Department of Health and Human Services Secretary Kathleen Sebelius,

(http://www.hhs.gov/news/press/2012pres/01/20120120a.html).   To date, Defendant HHS has not released any official rule implementing either the one-year extension or any similar relief that applies to Plaintiffs, which include a *for-profit* business owner and a *for-profit* company.

187.   It is inevitable with the current state of the law that Plaintiffs have to comply with the Mandate, despite the fact that Plaintiffs are violating the beliefs and teachings of their religious beliefs and the beliefs and teachings of their Southern Baptist faith by directly providing, funding, and/or allowing its members to engage in disseminating information and guidance about where to obtain emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life.

## CLAIMS

### COUNT I
### Violation of the First Amendment to the United States Constitution
### Free Exercise Clause

188.   Plaintiffs incorporate by reference all preceding paragraphs.

189.   Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life, or related education and counseling. Plaintiffs' compliance with these beliefs is a religious exercise.

190.   Neither the Affordable Care Act nor the Mandate is neutral.

191.   Neither the Affordable Care Act nor the Mandate is generally applicable.

192.   Defendants have created categorical exemptions and individualized exemptions to the Mandate.

193.    The Mandate furthers no compelling governmental interest.

194.    The Mandate is not the least restrictive means of furthering Defendants' stated interests.

195.    The Mandate creates government-imposed coercive pressure on Plaintiffs to change or violate their religious beliefs.

196.    The Mandate chills Plaintiffs' religious exercise.

197.    The Mandate exposes Plaintiffs to substantial competitive disadvantages, in that they will no longer be permitted to offer health insurance.

198.    The Mandate exposes Plaintiffs to substantial fines for their religious exercise.

199.    The Mandate exposes Plaintiffs to monetary and health risks as they cannot purchase or provide health care insurance without violating their religious beliefs.

200.    The Mandate imposes a substantial burden on Plaintiffs' religious exercise.

201.    The Mandate is not narrowly tailored to any compelling governmental interest.

202.    The Mandate and Defendants' enforcement of the Mandate violate Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment to the United States Constitution.

203.    Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

**COUNT II**
**Violation of the First Amendment to the United States Constitution**
**Free Exercise Clause**

204.    Plaintiffs incorporate by reference all preceding paragraphs.

205.     Plaintiffs' sincerely held religious beliefs prohibit them from purchasing or providing coverage for emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life, or related education and counseling.  Plaintiffs' compliance with these beliefs is a religious exercise.

206.     Despite being informed in detail of these beliefs beforehand, Defendants designed the Mandate and the religious exemption to the Mandate in a way that has made it impossible for Plaintiffs to comply with their religious beliefs.

207.     Defendants promulgated both the Mandate and the religious exemption to the Mandate in order to suppress the religious exercise of Plaintiffs and others.

208.     The Mandate and Defendants' enforcement of the Mandate thus violate Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment of the United States Constitution.

209.     Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

## COUNT III
### Violation of the First Amendment to the United States Constitution
### Free Exercise Clause

210.     Plaintiffs incorporate by reference all preceding paragraphs.

211.     By design, Defendants imposed the Mandate on some religious organizations or religious individuals but not on others, resulting in discrimination among religions.

212.     The Mandate vests HRSA with unbridled discretion in deciding whether to allow exemptions to some, all, or no organizations meeting the definition of "religious employers."

213.    The Mandate vests HRSA with unbridled discretion in deciding whether to allow exemptions to some, all, or no religious individuals.

214.    The Mandate and Defendants' threatened enforcement of the Mandate thus violate Plaintiffs' rights secured to it by the Free Exercise Clause of the First Amendment of the United States Constitution.

215.    Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

**COUNT IV**
**Violation of the First Amendment to the United States Constitution**
**Establishment Clause**

216.    Plaintiffs incorporate by reference all preceding paragraphs.

217.    By design, Defendants imposed the Mandate on some religious organizations but not on others, resulting in a selective burden on Plaintiffs.

218.    Defendants also imposed the Mandate on some religious individuals and religious organizations but not on others, resulting in a selective burden on Plaintiffs.

219.    The Mandate vests HRSA with unbridled discretion in deciding whether to allow exemptions to some, all, or no organizations meeting the definition of "religious employers."

220.    The Mandate also vests HRSA with unbridled discretion in deciding whether to allow exemptions to some, all, or no individuals.

221.    The Mandate and Defendants' enforcement of the Mandate therefore violates Plaintiffs' rights secured to it by the Establishment Clause of the First Amendment to the United States Constitution.

222.    Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

## COUNT V
### Violation of the First Amendment to the United States Constitution
### Freedom of Speech

223.    Plaintiffs incorporate by reference all preceding paragraphs.

224.    Plaintiffs profess, educate, and engage in outreach amongst the community that emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life violate their religious beliefs.

225.    The Mandate would compel Plaintiffs to provide or subsidize activities that Plaintiffs profess, educate, and engage in outreach amongst the community are violations of the Plaintiffs' religious beliefs.

226.    The Mandate would compel Plaintiffs to fund and to provide education and counseling related to emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life.

227.    Defendants' actions thus violate Plaintiffs' right to be free from compelled speech as secured to it by the First Amendment of the United States Constitution.

228.    The Mandate's compelled speech requirement is not narrowly tailored to a compelling governmental interest.

229.    Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

**COUNT VI**
**Violation of the First Amendment to the United States Constitution**
**Expressive Association**

230.     Plaintiffs incorporate by reference all preceding paragraphs.

231.     Plaintiffs profess, educate, and engage in outreach amongst the community that emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life violate their religious beliefs.

232.     The Mandate would compel Plaintiffs to subsidize activities that Plaintiffs profess, educate, and engage in outreach in the community are violations of Plaintiffs' religious beliefs.

233.     The Mandate would compel Plaintiffs to fund and to provide education and counseling related to emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life.

234.     Defendants' actions thus violate Plaintiffs' right of expressive association as secured to it by the First Amendment of the United States Constitution.

235.     Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

**COUNT VII**
**Violation of the First Amendment to the United States Constitution**
**Free Exercise Clause and Freedom of Speech**

236.     Plaintiffs incorporate by reference all preceding paragraphs.

237.     By stating that HRSA "may" grant an exemption to certain religious groups, the Mandate vests HRSA with unbridled discretion over which organizations or individuals can have its First Amendment interests accommodated.

238.   The Mandate furthermore seems to have completely failed to address the constitutional and statutory implications of the Mandate on for-profit employers such as Plaintiff Beckwith Electric Co., Inc. and Plaintiff Thomas R. Beckwith.  As such, Plaintiff Beckwith Electric Co., Inc. and Plaintiff Thomas R. Beckwith are subject to the unbridled discretion of HRSA to determine whether such companies would be exempt or are wholly left without relief from the Mandate.

239.   Defendants' actions violate Plaintiffs' right not to be subjected to a system of unbridled discretion when engaging in speech or when engaging in religious exercise, as secured to it by the First Amendment of the United States Constitution.

240.   Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

## COUNT VIII
## Violation of the Religious Freedom Restoration Act

241.   Plaintiffs incorporate by reference all preceding paragraphs.

242.   Plaintiffs' sincerely held religious beliefs prohibit it from providing or purchasing coverage for emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life, or related education and counseling.  Plaintiffs' compliance with these beliefs is a religious exercise.

243.   The Mandate creates government-imposed coercive pressure on Plaintiffs to change or violate their religious beliefs.

244.   The Mandate chills Plaintiffs' religious exercise.

245.   The Mandate exposes Plaintiffs to substantial fines for their religious exercise.

246.     The Mandate exposes Plaintiffs to substantial competitive disadvantages, in that it will no longer be permitted to offer or purchase health insurance.

247.     The Mandate imposes a substantial burden on Plaintiffs' religious exercise.

248.     The Mandate furthers no compelling governmental interest.

249.     The Mandate is not narrowly tailored to any compelling governmental interest.

250.     The Mandate is not the least restrictive means of furthering Defendants' stated interests.

251.     The Mandate and Defendants' enforcement of the Mandate violate Plaintiffs' rights secured to it by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq.

252.     Absent injunctive and declaratory relief against the Defendants, Plaintiffs have been and will continue to be harmed.

**COUNT IX**
**Violation of the Administrative Procedure Act**

253.     Plaintiffs incorporate by reference all preceding paragraphs.

254.     Defendants' stated reasons that public comments were unnecessary, impractical, and opposed to the public interest are false and insufficient, and do not constitute "good cause."

255.     Without proper notice and opportunity for public comment, Defendants were unable to take into account the full implications of the regulations by completing a meaningful "consideration of the relevant matter presented."  Defendants did not consider or respond to the voluminous comments they received in opposition to the interim final rule.

256.    Therefore, Defendants have taken agency action not in contravention to the procedures required by law, and Plaintiffs are entitled to relief pursuant to 5 U.S.C. § 706(2)(D).

257.    Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

## COUNT X
### Violation of the Administrative Procedure Act

258.    Plaintiffs incorporate by reference all preceding paragraphs.

259.    In promulgating the Mandate, Defendants failed to consider the constitutional and statutory implications of the mandate on Plaintiffs and similar organizations, companies, and individuals.

260.    Defendants' explanation for its decision not to exempt Plaintiffs and similar companies and religious individuals from the Mandate runs counter to the evidence submitted by religious organizations during the comment period.

261.    Thus, Defendants' issuance of the interim final rule was arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A) because the rules fail to consider the full extent of their implications and they do not take into consideration the evidence against them.

262.    Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

## COUNT XI
### Violation of the Administrative Procedure Act

263.    Plaintiffs incorporate by reference all preceding paragraphs.

264.    The Mandate is contrary to the provisions of the Weldon Amendment of the Consolidated Security, Disaster Assistance, and Continuing Appropriations Act of 2009, Public Law 110 329, Div. A, Sec. 101, 122 Stat. 3574, 3575 (September 30, 2008).

265.    The Weldon Amendment provides that "[n]one of the funds made available in this Act [making appropriations for Defendants United States Department of Labor and United States Department of Health and Human Services] may be made available to a Federal agency or program . . . if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions."

266.    The Mandate requires issuers, employers, and individuals, including Plaintiffs, to provide and purchase coverage of all Federal Drug Administration-approved emergency contraceptives.

267.    Some FDA-approved emergency contraceptives cause abortions.

268.    As set forth above, the Mandate violates RFRA and the First Amendment.

269.    Under 5 U.S.C. § 706(2)(A), the Mandate is contrary to existing law, and is in violation of the Administrative Procedure Act.

270.    Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

## COUNT XII
### Violation of the Administrative Procedure Act

271.    Plaintiffs incorporate by reference all preceding paragraphs.

272.    The Mandate is contrary to the provisions of the Affordable Care Act.

273.     Section 1303(a)(1)(A)(i) of the Affordable Care Act states that "nothing in this title"—i.e., title I of the Act, which includes the provision dealing with "preventive services"—"shall be construed to require a qualified health plan to provide coverage of [abortion] services . . . as part of its essential health benefits for any plan year."

274.     Section 1303 further states that it is "the issuer" of a plan that "shall determine whether or not the plan provides coverage" of abortion services.

275.     Under the Affordable Care Act, Defendants do not have the authority to decide whether a plan covers abortion; only the issuer does.

276.     However, the Mandate requires all issuers, including Plaintiffs and Plaintiffs' insurance issuer Humana, to provide coverage of all Federal Drug Administration-approved emergency contraceptives.

277.     Some FDA-approved emergency contraceptives cause abortions.

278.     Under 5 U.S.C. § 706(2)(A), the Mandate is contrary to existing law, and is in violation of the Administrative Procedure Act.

279.     Absent injunctive and declaratory relief against the Mandate, Plaintiffs have been and will continue to be harmed.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs request that the Court:

a.     Declare that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the First Amendment to the United States Constitution;

b.     Declare that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the Religious Freedom Restoration Act;

c.     Declare that the Mandate was issued in violation of the Administrative Procedure Act;

d.     Issue both a preliminary and a permanent injunction prohibiting and enjoining Defendants from enforcing the Mandate against Plaintiffs and other religious individuals, employers, and companies that object to funding and providing insurance coverage for emergency contraception, abortion, abortifacients, and any drugs, devices, and services that are capable of killing innocent human life, and related education and counseling;

e.     Award Plaintiffs the costs of this action and reasonable attorney's fees; and

f.     Award such other and further relief as it deems equitable and just.

Respectfully submitted,

THOMAS MORE LAW CENTER

 /s/  Erin Elizabeth Mersino
Erin Elizabeth Mersino, Esq. (P70886)*
Richard Thompson, Esq. (P21410)*
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan 48106
Tel (734) 827-2001
emersino@thomasmore.org
TRIAL COUNSEL

FOWLER WHITE BOGGS P.A.

 /s/  Paul R. Pizzo
Paul R. Pizzo (Florida Bar 113794)
Scott Richards (Florida Bar 0072657)
501 E. Kennedy Boulevard
Suite 1700
Tampa, Florida 33602
Tel (813) 228-7411
ppizzo@fowlerwhite.com
*Counsel for Plaintiffs*
*Pro hac vice pending*